UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNIVERSAL MERIDIAN ) | |
| E-COMMERCE, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:21 CV 357 RWS |
| ) | |
| STEVEN PUCHALSKY, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

This matter is before me on Defendants Steven Puchalsky ("Puchalsky"), Amy Dobelmann ("Dobelmann"), and Gapp Group, LLC's ("Gapp") motion to dismiss four claims in Plaintiffs Universal Meridian E-Commerce, Inc. ("UMEC") and Meridian Enterprises Corp.'s ("MEC") first amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[1]  I will grant the motion in part and deny it in part.

# BACKGROUND

Puchalsky and Dobelmann were previously employed by MEC, a company that is "engaged in the highly competitive business of complete, outsourced

---

[1] When discussing the parties collectively, I will refer to Plaintiffs as "Meridian" and Defendants as "Puchalsky."

1

ecommerce solutions to global brands in a wide variety of industries." Puchalsky worked for MEC from October 1991 until his resignation in July 2020. Throughout his employment, he held the positions of Executive Vice President of Sales and Incentives and National Accounts Manager. Dobelmann's employment began in October 1995, and she served as an Account Director until her resignation on June 30, 2020. Because both employees had access to MEC's confidential information and trade secrets, they signed confidentiality and non-compete contracts (Puchalsky in August 2010 and Dobelmann in January 2003). According to the first amended complaint, around December 2016, Puchalsky and another MEC employee (Garrett Lehman) cofounded Gapp, which is a direct competitor of MEC. Puchalsky and Dobelmann have allegedly used Meridian's confidential information and trade secrets to build their business at Gapp.

The first amended complaint describes UMEC as "a subsidiary and/or affiliate of MEC." According to Meridian's opposition brief, MEC "formed [UMEC] to continue on with business previously performed by [MEC]" in 2019. As a result, Puchalsky and Dobelmann's contracts, submitted alongside the amended complaint, do not mention UMEC and do not expressly declare any intent to directly benefit or bind UMEC.

Meridian filed its initial complaint on March 22, 2021. Following a Rule 16 conference held on June 3, 2021, Meridian filed a motion for leave to file an

2

amended complaint, which I granted. The amended complaint, filed on June 21, 2021, contains eleven counts. Puchalsky argues that Counts V-VII must be dismissed under Fed. R. Civ. P. 12(b)(1), while Count VII and Count X must be dismissed under Fed. R. Civ. P. 12(b)(6). Count V alleges a breach of contract claim against Puchalsky; Count VI alleges a breach of contract claim against Dobelmann; Count VII alleges a claim of tortious interference with contract against all defendants; and Count X alleges a claim of conversion against all defendants.

## LEGAL STANDARDS

### Rule 12(b)(1)

The party invoking subject matter jurisdiction bears the burden of establishing that the case is properly in federal court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). This means satisfying the statutory requirements under 28 U.S.C. § 1331 (federal question cases) or 28 U.S.C. § 1332 (diversity cases), in addition to the constitutional requirements for standing. To satisfy the requirements of constitutional standing, the plaintiff must show (1) that he suffered an injury in fact; (2) that the injury he suffered is fairly traceable to the challenged action of the defendant; and (3) that the injury is likely to be redressed by a favorable court decision. Id. at 560-61. If these three requirements are not satisfied, a court does not have subject matter jurisdiction over the case and must

dismiss it. ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011).

When deciding a Rule 12(b)(1) motion to dismiss, I must determine whether the movant's attack on jurisdiction is "facial" or "factual." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If the attack is facial, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. If a movant raises a factual attack, the court may consider matters outside the pleadings. Id. Because Puchalsky has not "challenge[d] the veracity of the facts underpinning subject matter jurisdiction." Davis v. Anthony, Inc., 886 F.3d 674, 679 (8th Cir. 2018) (citation omitted), I will construe this motion to dismiss as a facial attack on jurisdiction.

### Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## ANALYSIS

### 1. Counts V-VII

Puchalsky argues that UMEC lacks standing to enforce the agreements between Puchalsky and Dobelmann and MEC. Meridian argues that UMEC is a third-party beneficiary to the contracts and therefore has standing. Case law on this issue establishes that successor corporations are third-party beneficiaries of contracts executed by their predecessors under certain circumstances. See Symphony Diagnostic Servs. No. 1 Inc. v. Greenbaum, 828 F.3d 643, 647 (8th Cir. 2016) (applying Missouri law and finding that plaintiff company, which acquired previous company via asset purchase, could enforce "free-standing" non-compete and confidentiality agreements entered into with former employees); Alexander & Alexander, Inc. v. Koelz, 722 S.W.2d 311, 313 (Mo. Ct. App. 1986) (same, except in the context of a statutory merger; the surviving company could enforce covenants not to compete because the merger "apparently had no affect [sic] on the business of employer" and caused "no material change in the contract obligations and duties of the employee"). Meridian contends that the reasoning of these cases is applicable to the instant case. However, Puchalsky argues that these cases are distinguishable

5

because Meridian has not alleged that any asset purchase or merger occurred between MEC and UMEC.

It is not clear, from the face of the amended complaint, how UMEC was formed. In an attempt to clarify the facts, Meridian submitted the affidavit of UMEC CEO Greg Toumayan. Puchalsky objects to my consideration of the affidavit, arguing that because he has presented a facial attack on jurisdiction rather than a factual one, I must restrict myself to the face of the pleadings in ruling on the motion to dismiss. In the alternative, Puchalsky also argues that the affidavit does not establish that UMEC has standing to enforce the contracts because it does not allege that a merger or asset purchase took place between MEC and UMEC.

Because the motion to dismiss "asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction," Puchalsky is correct that I cannot consider matters outside the pleadings. Davis, 886 F.3d at 679. I cannot determine, based on the allegations in the amended complaint, how UMEC acquired MEC, whether by a stock purchase, asset purchase, or merger. It does at least appear that Puchalsky and Dobelmann's "duty not to compete [was not] materially altered" when UMEC acquired MEC, and that "[t]he mere change in corporate personality would not…alter their duties." Alexander & Alexander, 722 S.W.2d at 313. See also Trinity Hospice, Inc. v. Miles, 2007 WL 844817, at *2 (E.D. Mo. Mar. 16, 2007) ("So long as there is no material change in the contract obligations and the duty of

6

the employee, a change in the form in which a business is owned or conducted will not result in a prohibited assignment of a personal services contract") (citing Alexander & Alexander, 722 S.W.2d at 313). Based on the facts as pleaded, I cannot determine as a matter of law whether UMEC has standing to seek enforcement of the confidentiality and non-compete agreements with Puchalsky and Dobelmann. As a result, I will grant the motion to dismiss Counts V-VII under Rule 12(b)(1). However, I will allow Meridian to file an amended complaint that sets forth the relationship between MEC and UMEC and explains how UMEC has standing to seek enforcement of the agreements.

Puchalsky also argues that Meridian did not state a claim for Count VII, tortious interference with contract. Under Missouri law, the elements for tortious interference with a contract or valid business expectancy are: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." Western Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 19 (Mo. banc 2012) (citation omitted). According to Puchalsky, Meridian failed to plead sufficient facts about its contractual relationships with different customers because it did not provide details about "the parties to the contracts, the terms of the contracts, or any other relevant language."

7

The amended complaint states that Meridian has "ongoing contractual relationships with its clients;" that all defendants were aware of those relationships, had an obligation not to interfere with those relationships, and did interfere with those relationships without justification by using and disclosing confidential information and trade secrets; and that Meridian has consequently been damaged. Because "detailed factual allegations" are not required at this stage in the case, I find that Meridian has sufficiently stated a claim for tortious interference with contract. Iqbal, 556 U.S. at 678.

### 2. Count X

Finally, Puchalsky argues that Meridian has failed to state a claim for conversion. Under Missouri law, a claim of conversion requires a plaintiff to show "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." Missouri Ozarks Radio, Network, Inc. v. Baugh, 598 S.W.3d 154, 160-61 (Mo. Ct. App. 2020). There are three ways to prove conversion: "(1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand." Kennedy v. Fournie, 898 S.W.2d 672, 678 (Mo. Ct. App. 1995).

The amended complaint alleges that "Defendants have assumed the right of ownership over Meridian's personal property, including its Confidential Information and Trade Secrets," and that they converted this property by deleting "emails and other electronic data." Puchalsky argues that because deleted emails can be recovered, Meridian did not allege that it was deprived of the right to possess the allegedly converted data and as a result, has not satisfied the third element of the tort.

Meridian cites several cases in support of its argument that deleting emails constitutes conversion. However, two of these cases, Kremen v. Cohen, 337 F.3d 1024, 1034 (9th Cir. 2003) and Network Sys. Architects Corp. v. Dimitruk, 2007 WL 4442349, at *10 (Mass. Super. Dec. 6, 2007), stand for the broad proposition that electronic information can be the subject of a conversion claim. Two other cases, Sims v. Little Rock Plastic Surgery, P.A., 2020 WL 4514572 (E.D. Ark. Aug. 5, 2020) and Integrated Direct Mktg., LLC v. May, 495 S.W.3d 73, 76 (Ark. 2016), address the specific issue of whether deleting emails amounts to conversion, but those cases applied Arkansas state law, which "does not require that the owner or person entitled to possession be completely deprived of their property in order for conversion to occur." May, 495 S.W.3d, at 75.

Meridian alleges that it "made a demand for return of [the electronic data] and Defendants have been under an obligation to return [it]." This is not an allegation

9

that Meridian no longer possesses or has access to the data at issue.[2]  Because Meridian has not stated a claim for conversion under Missouri law, Count X is dismissed.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants Amy Doblemann, Steven Puchalsky, and Gapp Group, LLC's motion to dismiss, [33], is **GRANTED** in all respects except with regard to their motion to dismiss Count VII under Rule 12(b)(6), which is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff Meridian shall have until **October 25, 2021** to file an amended complaint explaining the relationship between MEC and UMEC and how UMEC has standing to seek enforcement of the agreements.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2021.

---

[2] Because deleted electronic data is, as Puchalsky notes, "easily retrievable," I find this claim, as pleaded in the complaint, akin to a conversion claim of copied documents.  The United States Court of Appeals for the Eighth Circuit has held that "[u]nder Missouri law, a copy of a document cannot be converted where the owner has not been deprived of possession of the property or prevented from utilizing the property." Monarch Fire Prot. Dist. of St. Louis Cty., Mo. v. Freedom Consulting & Auditing Servs., Inc., 644 F.3d 633, 637 (8th Cir. 2011).